# APPEALS OF BONNEVILLE LUMBER CO., OVERLAND LUMBER CO., GEM STATE LUMBER CO., AND MORRISON-MERRILL & CO.

Docket Nos. 3657, 3946, 3984, 4358.   Submitted August 1, 1925.   Decided September 8, 1925.

The taxpayers were affiliated with the George E. Merrill Co. and the National Park Lumber Co. during the years 1919 and 1920.

*Walter G. Moyle, Esq.*, for the taxpayers.
*P. S. Crewe, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

These appeals are from determinations of deficiencies in income and profits taxes as follows:

Bonneville Lumber Co., calendar year 1919_____ $703. 92
Overland Lumber Co., calendar year 1919_____ 51. 45
Gem State Lumber Co., calendar year 1919_____ 255. 20
Morrison-Merrill & Co., calendar year 1920_____ 250. 93

The sole question involved is whether the above companies were affiliated with the George E. Merrill Co. and the National Park Lumber Co. during the years 1919 and 1920 within section 240 of the Revenue Act of 1918. From the depositions and oral and documentary evidence presented at the hearing the Board makes the following

FINDINGS OF FACT.

The taxpayers are all Utah corporations, with their principal offices in the office of the George E. Merrill Co. at Salt Lake City. In 1906 George E. Merrill acquired control of Morrison-Merrill & Co., a corporation engaged principally in the wholesale and jobbing distribution of lumber and building material throughout the territory tributary to Salt Lake City, Utah. Closely associated with him in the acquisition of that control as a legal adviser and stockholder in the company was Andrew Howat. Incident to the operation of the company very close relations developed between Merrill, a Curtis group of Clinton, Iowa, who were sash and door manufacturers, and a Day group, who were manufacturers of cement, which groups looked to Morrison-Merrill & Co. as the medium for selling their products in that territory.

In order properly to fortify the business of the wholesale company it was deemed advisable to acquire retail yards. Pursuant to that plan the Bonneville Lumber Co. was organized in 1910 to operate

retail yards in Utah. Shortly thereafter, in the year 1911, the same interests, including the Day and Curtis groups, organized the Gem State Lumber Co. to handle the retail trade in southern Idaho territory. In 1912 they organized the George E. Merrill Co., hereinafter referred to as the parent company, as a holding company and a medium through which to exercise control and supervision over the retail units. In 1915 the National Park Lumber Co. was organized to acquire retail distributing interests in eastern Oregon. In the same year the assets of another company were acquired and the Overland Lumber Co. organized to operate in southern Wyoming.

The majority of the stock of the subsidiaries was held by the parent company. In addition there were two classes of stockholders, which for convenience we shall designate as investment and option agreement stockholders. The investment stockholders consisted of relatives or close business associates of the holders of the stock in the parent company. The stock was issued to them under an oral understanding that, should they thereafter desire to dispose of the same, the parent company would first be given the opportunity to purchase it. In several instances the parent company has purchased such stock. The option agreement stockholders were composed of active executives and employees of the subsidiaries who acquired their stock under a plan devised for the purpose of permitting them to participate in the profits of the enterprise in which they were interested. The purchase of the stock was financed by the parent company which held the stock as collateral. Each person so acquiring stock signed a written agreement not to hypothecate, sell, or otherwise dispose of his stock except to the parent company. Under these contracts the parent company could repurchase the stock at any time at its book value and it was obligated to repurchase stock at the holder's option. During the years 1919 and 1920 the parent company, acting under these contracts, repurchased stock in a number of instances.

The percentage of stock ownership in the various companies during the years 1919 and 1920 was as follows:

|  | Morrison-Merrill & Co. | | Gem State Lumber Co. | | Bonneville Lumber Co. | | National Park Lumber Co. | | Overland Lumber Co. | |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 1919 | 1920 | 1919 | 1920 | 1919 | 1920 | 1919 | 1920 | 1919 | 1920 |
| Parent company | 71.2 | 66.7 | 82.5 | 82.8 | 87.3 | 87.3 | 65.1 | 66.7 | 82.0 | 73.5 |
| Option agreement stockholders | 14.4 | 19.3 | 13.5 | 13.1 | 10.0 | 10.0 | 16.6 | 15.0 | 3.0 | 11.5 |
| Investment stockholders | 14.4 | 14.0 | 4.0 | 4.1 | 2.7 | 2.7 | 18.3 | 18.3 | 15.0 | 15.0 |
|  | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 |

The stock of the subsidiary companies has never been on the market, the parent company having dictated at all times who the stockholders should be. The minority stockholders have always

acquiesced in the action of the majority, most of them having given proxies to the officers of the parent company.

The officers and directors of the parent company constituted a majority of the board of directors of each subsidiary and were the principal officers thereof. The salaries of the officers of the subsidiary companies who were also officers of the parent were paid directly by the parent, the funds necessary to cover them, as well as other factors of expense, being provided by arbitrary assessment against the subsidiaries. All the meetings of the subsidiary companies were held at the office of the parent; their books were kept by the secretary of the parent company who also did their secretarial work. The parent company transferred executives and employees from one subsidiary to another. It determined the source of supply of the merchandise requirements and controlled the manner of distribution and the volume of business placed with Morrison-Merrill & Co., the wholesale unit, by its several retail units, irrespective of prices. Morrison-Merrill & Co. has at all times handled the larger portion of the wholesale requirements of the subsidiaries with the exception of the first six months of 1920, when it was able to advantageously place the available mill tonnage with purchasers other than the subsidiaries. The subsidiaries were, during that period, directed by the parent company to transfer their patronage to other wholesale sources. All banking and credit arrangements for the subsidiary companies were handled exclusively by the parent company. To more fully equalize returns on capital and by way of revision of territorial distribution, productive investments were transferred from one subsidiary to another on terms which would not have been made to anyone outside of the group.

Separate returns were filed by each of the subsidiaries for the year 1919, and a consolidated return including the George E. Merrill Co., the Gem State Lumber Co., and the Bonneville Lumber Co. for the year 1920. A consolidated return was subsequently filed for 1919, including therein the above-named companies. The Commissioner ruled that the companies were not affiliated in 1919, and computed the tax of Morrison-Merrill & Co. on a separate basis for the year 1920.

### DECISION.

The taxpayers were affiliated with the George E. Merrill Co. and National Park Lumber Co. during the years 1919 and 1920. *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Appeal of Isse Koch & Co.*, 1 B. T. A. 624. The deficiencies, if any, should be computed on that basis. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

ARUNDELL not participating.